UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MICHAEL ANTHONY EVANS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:12-CV-33 |
| | § | |
| EDGAR HULIPAS, | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM AND ORDER

State inmate Michael Anthony Evans (TDCJ #497500) alleges in this *pro se* civil rights case that Dr. Edgar Hulipas acted with deliberate indifference to Evans's serious medical needs. Pending before the Court is defendant's motion for summary judgment, to which plaintiff has responded. After reviewing the pleadings, the summary judgment record, and the applicable law, the Court grants defendant's summary judgment motion for the reasons that follow.

## I. BACKGROUND

Evans alleges that a back condition (spinal stenosis and spondylosis) led prison officials to originally institute an order for pain medication, a neck brace, a limited work assignment, a lower bunk assignment, and no walking on uneven surfaces. But, according to Evans, prison officials wrongfully terminated that order upon his transfer to the Wayne Scott unit in July 2010.

## II.     THE SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Christopher Village, L.P. v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Owsley v. San Antonio Indep. Sch. Dist.,* 187 F.3d 521, 523 (5th Cir. 1999), *cert. denied*, 529 U.S. 1020 (2000). "Although we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial." *Rushing v. Kansas City Southern Ry. Co.,* 185 F.3d 496, 505 (5th Cir. 1999), *cert denied,* 528 U.S. 1160 (2000).

## III.    THE CLAIM OF DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment," and this includes "indifference . . . manifested by prison doctors in their response to the prisoner's needs." *Estelle v. Gamble*, 429 U.S. 97, 105-105 (1976). "Deliberate indifference is an extremely high standard to meet," *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), and requires that a defendant's conduct rise "to the level of egregious conduct." *Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir.

2006).  The United States Supreme Court has adopted "subjective recklessness as used in the criminal law" as the appropriate definition of deliberate indifference under the Eighth Amendment.  *Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994).  A prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety.  *Id.* at 837.

To get past summary judgment on a deliberate indifference claim, a plaintiff must raise a fact issue concerning whether prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).  Merely negligent diagnosis or treatment of a medical condition does not state a claim under the Eighth Amendment.  *Estelle*, 429 U.S. at 106.  Rather, there must be "deliberate indifference, which results in substantial harm."  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).  Medical records showing that an inmate received treatment may rebut allegations of deliberate indifference.  *See Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991).  Where there are indications of a course of treatment for an inmate's medical condition, as in the instant case, it is extremely difficult to make a showing of deliberate indifference.  *Id.*

Evans alleges that he entered the Wayne Scott Unit with "a debilitating cervical spine and lumbar spine disorder" that was diagnosed at the University of Texas Medical Branch at Galveston in 2007 or 2008.  After the diagnosis and before his transfer to the Wayne Scott unit, Evans was provided with "a neck brace, pain medication, orders for

3

limited work assignment, lower bunk and no walk [sic] on wet or uneven surfaces restrictions, physical therapy, epidural steroid injection in the cervical spine, and bilateral joint steroid injection in the lumbar spine." (ECF No. 1-4). Evans claims that despite repeated sick call requests and physical examinations between July 22, 2010, when he entered the unit, and October 2010, Dr. Hulipas would not restrict his work assignment or recommend a bottom bunk assignment. As a result, prison officials assigned Evans to work in the garden and sleep in a top bunk.

Evans identifies two incidents in his attempt to establish that Dr. Hulipas acted with deliberate indifference in refusing to impose the restrictions Evans desired. The first occurred on August 24, 2010, when Evans allegedly injured his lower back while "shepping in the fields with a garden tool," and, after two hours of waiting for medical staff to arrive, walking to the infirmary "with some difficulties." The second allegedly occurred the next day, August 25, 2010, when Evans "was halfway coming down from the top bunk [and] a sharp and contraction type pain came across his lower back and he fell to the floor while hitting (he assumes) part of the wall inside the cell. Because of the fall, the pain in the neck and lower back were so intense that the plaintiff had to be taken on a stretcher to the infirmary." (ECF No. 1-6).

In considering whether there is evidence from which a jury could infer that Dr. Hulipas acted with deliberate indifference, the Court considers the comprehensive picture of Evans's medical condition and treatment. Evans was examined by Dr. McCasland on four occasions during summer 2010 for complaints regarding his work shoes and for

reevaluation to have his work restrictions reinstated. Dr. McCasland noted that Evans was a "well-nourished/developed muscular adult male with symmetric musculature, a steady gait, upright posture; on/off the exam table without difficulty or grimace; no deformity, erythema, edema, ecchymosis or edema present." (ECF No. 20, Exh. A3). Dr. McCasland also noted no medical reason for "medical boots," prescribed ibuprofen for pain as needed, and informed Evans that garden work and a top bunk assignment were appropriate. Similarly, Dr. Dumas denied Evans's request for medical restrictions on August 13, 2010.

Evan's next request for reevaluation resulted in an examination by Dr. Hulipas on August 19, 2010. Like the other two doctors who had recently considered the same request from Evans, Dr. Hulipas found no medical reason to impose medical restrictions. Less than a week later was the incident previously discussed in which Evans allegedly fell while climbing down from the top bunk. The Nursing Notes, however, belie Evans's claim that he was injured so badly that he had to be carried to the infirmary on a stretcher. The notes reveal that Evans walked into the infirmary complaining that he had just fallen from the top bunk. The notes further state:

> Able to walk to medical and lay in supine position on bench in holding area and then able to stand up on command without difficulty. Showed grimace while transferring self from bench to treatment room. States "I have spinal problems and I need my status changed or I will start writing people up." Informed patient that MD ordered medication to decrease discomfort this a.m. . . . patient was very angry and left medical with a shuffled gait.

(ECF No. 20, Exh. A21). Dr. Hulipas examined Evans the next day. His notes reveal that Evans stated that he did not want to work in the fields and that he wanted a bottom bunk

assignment. Dr. Hulipas observed no acute findings and noted that Evans walked out of the infirmary.

The summary judgment evidence also includes the affidavit of Dr. Steven Bowers, a physician who reviewed Evans's medical record from January 2008 through April 2011, (ECF No. 20, Exh. B1), and provided an expert medical opinion as to the medical care provided by Dr. Hulipas. The affidavit provides an extensive summary of Evans's medical history preceding his entry into the Wayne Scott Unit, as well as the time period forming the basis of this suit. In July 2010, an MRI and medical tests performed by Dr. Allen at the UTMB orthopedic Cyb-R Care Clinic revealed that Evans had no significant stenosis and mild lumbar spondylosis. His treatment plan consisted of muscle relaxants, non-steroidal anti-inflammatory drugs for pain and steroid injections if requested. No medical restrictions were recommended.

Dr. Bowers states, and the record reveals, that Dr. Hulipas examined Evans four times between August 2010 and October 2010. On two of these exams Evans did not complain of pain and sought only reevaluation for medical restrictions. On August 26, 2010, one day after Evans's alleged fall from the top bunk, Dr. Hulipas examined Evans and found him to be in no apparent distress and able to sit on the exam table and maintain position with no trouble. He prescribed a muscle relaxant to be taken for seven days and advised Evans to continue his range-of-motion exercises. (ECF No. 20, Exh. B7).

In September 2010, Evans was examined by Dr. Hulipas for complaints of neck pain. Evans again indicated that he did not like working in the fields. Medical records

reveal that Evans was in no apparent distress, had full range of motion in his neck with no atrophy, and a normal gait.  Dr. Hulipas noted no acute findings and found no reason to impose changes in his medical restrictions.  Evans was advised to take his pain medication as needed, to continue range-of motion exercises, and to keep his UTMB specialty appointments.  *Id*.

Dr. Hulipas last examined Evans on October 8, 2010, after Evans requested another reevaluation for restrictions.  Again, Dr. Hulipas reported no acute findings and noted that Evans was in no apparent distress, had a normal gait, ambulated without difficulty, and had no difficulty getting on or off the exam table.  He advised Evans as he did in September 2010.  (ECF No. 20, Exh. B8).

In summary, Dr. Bowers noted that pursuant to the *Guidelines for Completing the Health Summary for Classification Form*, lower bunk assignments were reserved for inmates whose medical conditions posed major difficulties with climbing into an upper bunk.  Examples described include those who are feeble with age, have disabling arthritis, amputation, paraplegia, epilepsy, sensory disturbances, morbid obesity, grade 2 or greater spondylolisthesis, or cardiovascular or severe respiratory disease.  Dr. Bowers noted that Evans did not have spondylolisthesis or any other medical condition warranting a bottom bunk assignment.  He concurred with the medical findings of Dr. Hulipas and concluded that the medical treatment he provided Evans was both "appropriate and performed within the proper standard of care," and was done so responsibly and in good faith.  (ECF No. 10, Exh. B9).

Based on the competent summary evidence, the Court concludes that no evidence exists to support a claim that Dr. Hulipas "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional right. *Youngberg v. Romeo,* 457 U.S. 307, 322-23 (1982). That is the case here, and Evans's mere disagreement with the professional judgment of Dr. Hulipas—a judgment shared by the two other doctors who rejected Evans's request for restrictions just weeks before Dr. Hulipas did—does not give rise to a constitutional claim.

### IV.   CONCLUSION

Defendants' Motion for Summary Judgment is **GRANTED.** This case is **DISMISSED**, with prejudice. Any remaining pending motions are denied as moot.

It is so **ORDERED.**

SIGNED this 27th day of March, 2013.

_____
Gregg Costa
United States District Judge